UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MPAY Inc.,                                                             Civ. No. 19-704 (PAM/BRT)

                Plaintiff,

v.                                                                **MEMORANDUM AND ORDER**

Erie Custom Computer
Applications, Inc., PayDay
USA, Inc., Payroll World, Inc.,
Proliant, Inc., Proliant
Technologies, Inc., and Kevin
Clayton,

                Defendants.

---

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction. For the following reasons, the Motion is denied.

**BACKGROUND**

The dispute in this case revolves around software source code for payroll systems. Twenty years ago, Plaintiff MPAY and many of the Defendant entities, all of whom are payroll processors, formed a limited liability company called OnePoint Solutions, LLC, to license a payroll software called Millenium from MPAY. The parties executed both a Member Control Agreement for OnePoint (Am. Compl. (Docket No. 17) Ex. 3) and a Software Development and License Agreement between MPAY and OnePoint (id. Ex. 4). Both Agreements gave OnePoint and its members the right to use MPAY's software. (Id. Ex. 3 § 5.1; Ex. 4 § 2(a).)

The License Agreement also contemplated a "Phase II" of the parties' relationship, during which OnePoint could modify the software to develop "Enhanced Software Products." (Id. §§ 2(e), 3.) As part of Phase II, MPAY agreed to convey any copyrights in the Enhanced Software Products to OnePoint. (Id. § 3(d).) Phase II was to begin less than two years after the parties entered into the License Agreement. Although only OnePoint is a Minnesota company, the member control agreement provides for venue in Minnesota. (Am. Compl. Ex. 3.) The License Agreement stipulates to jurisdiction and venue in Minnesota, and also has a Minnesota choice-of-law provision. (Id. Ex. 4.)

According to MPAY, Defendants are breaching the terms of the Member Control Agreement by providing the software source code to other entities. According to Defendants, MPAY has continually breached its obligations under the License Agreement by failing to provide the complete source code to OnePoint for development of the enhanced products. MPAY's claims are based in copyright and trade secrets, but the copyrights on which it relies did not issue until March 2019, shortly before it filed this lawsuit.

**DISCUSSION**

**A.     Personal Jurisdiction**

Defendants first challenge the Court's personal jurisdiction, contending that they do not have the requisite minimum contacts with Minnesota to make the exercise of jurisdiction over them proper.[1] After additional briefing on the issue, Defendant Proliant,

---

[1]     OnePoint is a Minnesota corporation with its principal place of business in Georgia, but it is not a Defendant here. Defendants are residents of other states: Erie Custom

Inc., no longer contests the exercise of jurisdiction over it. Although Proliant is a Nevada Corporation, it has a registered office in Minnesota. The remaining Defendants, however, continue to argue that they do not have sufficient contacts with Minnesota to warrant the exercise of jurisdiction.

The Court can exercise personal jurisdiction over a nonresident defendant if (1) Minnesota's long-arm statute, Minn. Stat. § 543.19, is satisfied; and (2) the exercise of personal jurisdiction does not offend due process. Stanton v. St. Jude Med., Inc., 340 F.3d 690, 693 (8th Cir. 2003). Because Minnesota's long-arm statute extends the personal jurisdiction of Minnesota courts as far as due process allows, see e.g., In re Minn. Asbestos Litig., 552 N.W.2d 242, 246 (Minn.1996), the Court need only evaluate whether the exercise of personal jurisdiction comports with the requirements of due process. See Guinness Import Co. v. Mark VII Distribs., Inc., 153 F.3d 607, 614 (8th Cir. 1998).

Due process requires that the defendant have "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted). Sufficient minimum contacts exist when the "defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

---

Computer Applications is a Pennsylvania corporation, PayDay USA is a Georgia corporation, Payroll World is a California corporation, Proliant is a Nevada corporation, Proliant Technologies is a Florida corporation, and individual Defendant Kevin Clayton lives in Atlanta. Plaintiff MPAY is a Massachusetts corporation with its principal place of business in North Carolina.

There must be some act by which the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). In contrast, contacts that are merely random, fortuitous, attenuated, or that are the result of "unilateral activity of another party or a third person" will not support personal jurisdiction. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (citation omitted).

To determine the sufficiency of a defendant's conduct with the forum state, the Court examines five factors: (1) the nature and quality of the contacts; (2) the quantity of the contacts; (3) the relation between the contacts and the action; (4) the forum state's interest in the litigation; and (5) the convenience of the parties. Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 648 (8th Cir. 2003). The third factor distinguishes between general and specific jurisdiction. Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc., 65 F.3d 1427, 1432 & n.4 (8th Cir. 1995). General jurisdiction is present whenever a defendant's contacts with the forum state are so "continuous and systematic" that it may be sued in the forum over any controversy, independent of whether the cause of action has any relationship to the defendant's activities within the state. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984). Specific jurisdiction refers to jurisdiction over causes of action arising from or related to the defendant's actions within the forum state. Burger King, 471 U.S. at 472-73. The fourth and fifth factors are secondary to the analysis. Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co., 63 F.3d 694, 697 (8th Cir. 1995). It is MPAY's burden to plead facts supporting "a reasonable inference that [Defendants] can be subjected to jurisdiction within the state." Dever v.

Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004). However, "[t]he evidentiary showing required at the prima facie stage is minimal." Johnson v. Arden, 614 F.3d 785, 794 (8th Cir. 2010) (quotation omitted). And the Court views the evidence in the light most favorable to MPAY, resolving all factual conflict in MPAY's favor when determining whether MPAY has met its burden. K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588 592 (8th Cir. 2011) (citation omitted).

MPAY argues that the exercise of specific jurisdiction is appropriate because Defendants are members of OnePoint, which consented to the jurisdiction of Minnesota courts in the License Agreement's forum-selection clause. MPAY further argues that specific jurisdiction lies because the Defendant entities are members, and Clayton is the manager, of a Minnesota LLC. MPAY also contends that the "totality of the circumstances" warrants the exercise of jurisdiction.[2]

As an initial matter, it is clear that Clayton has sufficient contacts with Minnesota to support the exercise of at minimum specific, if not general, jurisdiction over him. Clayton is the manager of OnePoint, a Minnesota LLC, and is CEO of Proliant, Inc., which has a registered office in Minnesota. He cannot reasonably claim surprise at being haled into court in Minnesota.

MPAY contends that the remaining Defendants are subject to the Court's specific jurisdiction through the operation of the mandatory forum-selection clause in the License

---

[2] MPAY's argument that Defendants waived any challenge to the Court's jurisdiction by filing an answer is without merit, as Defendants asserted personal jurisdiction as an affirmative defense in their Answers. (E.g., Docket No. 50 Ninth Affirmative Defense.)

5

Agreement. Although this agreement is only between MPAY and OnePoint, MPAY argues that the Member Control Agreement each Defendant signed incorporates the forum-selection clause. And if not bound as signatories to the License Agreement, MPAY asserts that Defendants are bound as "'closely related' third parties to the License Agreement." (Docket No. 59 at 2.)

Each Defendant signed the Member Control Agreement, agreeing that any software license MPAY provided "shall be subject to the terms and conditions of the Primary License." (Docket No. 17, Ex. 3 § 1.20.) The "Primary License" stems from the License Agreement, which contains a mandatory forum-selection clause and consent to the jurisdiction of Minnesota courts. (Id. Ex. 4 § 12(a).) Viewing these Agreements in the light most favorable to MPAY, it is plausible that the Member Control Agreement incorporated the License Agreement's forum-selection clause. Thus, for the purposes of this Motion, MPAY has met its minimal burden to establish that the exercise of personal jurisdiction over Defendants is appropriate.

**B.  Preliminary Injunction**

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). When deciding whether to issue a preliminary injunction, courts consider four factors: (1) the threat of irreparable harm to the movant; (2) the balance of harm the injunction would have on the movant and the opposing party; (3) the probability that movant will succeed on the merits; and (4) the public interest. Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981). While no factor

is dispositive, "the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied." Barrett v. Claycomb, 705 F.3d 315, 320 (8th Cir. 2013).

### 1. Likelihood of Success on the Merits

To demonstrate a likelihood of success on the merits of its claims, MPAY must establish that it has a "fair chance of prevailing" on those claims. Planned Parenthood of Minn., N. Dak., S. Dak. v. Rounds, 530 F3d 724, 732 (8th Cir. 2008) (en banc). This standard does not require "the party seeking relief [to] show 'a greater than fifty percent likelihood that [it] will prevail on the merits.'" Id. at 731 (quoting Dataphase, 640 F.2d at 113). And if the other three factors "strongly favor[] the moving party," then "a preliminary injunction may issue if movant has raised questions so serious and difficult as to call for more deliberate investigation." Dataphase, 640 F.2d at 113.

MPAY's copyright claim contends that Defendants have provided MPAY's copyrighted source code to unauthorized third parties. The trade-secrets claim is the same: that the source code is a trade secret and Defendants are misappropriating the code by giving it to third parties. To succeed on a claim of copyright infringement, according to MPAY, it need only show that it owns the copyrights, that Defendants had access to the copyrighted work, and that the allegedly infringing works are substantially similar to the copyrighted work. Similarly, MPAY argues that it can establish its trade-secret claim because only OnePoint was authorized to possess the code and MPAY has evidence that OnePoint provided the code to Defendants and to others.

7

But the License Agreement allows OnePoint to use MPAY's software "for its business, the business of any of the Members, or the business of any third party in the United States, Canada, and Mexico." (Am. Compl. Ex. 4 § 2(a).) While MPAY contends that "use" of the software does not include providing the underlying source code to others, the License Agreement allows OnePoint to develop "enhanced software products" based on MPAY's software, which must necessarily entail providing the source code to others. MPAY contends that there are no agreements in the record evidencing transfer of the source code for development pursuant to the License Agreement, but whether such agreements are required for the transfers at issue is a matter of evidentiary dispute.

The License Agreement rebuts MPAY's claims here, and MPAY has not established that it will succeed on the merits of those claims. In the absence of a likelihood of success, and because the remaining factors all turn on MPAY's ability to prove its claims, the request for preliminary injunction must be denied.

### 2. Irreparable Harm

MPAY argues that irreparable harm is presumed in copyright and trade-secret infringement claims. West Publ'g Co. v. Mead Data Cent., Inc., 799 F.2d 1219, 1229 (8th Cir. 1986); see also Minn. Stat. § 325C.02(a); 18 U.S.C. § 1836(b)(3) (providing for an injunction against the "actual or threatened misappropriation" of trade secrets).

Recent decisions, however, have cast doubt on the presumption MPAY claims. Winter, 555 U.S. at 22. Although the Eighth Circuit Court of Appeals has not decided the issue, some courts in the Circuit have found that any presumption of irreparable harm is inappropriate post-Winter. E.g., TrueNorth Cos., L.C. v. TruNorth Warranty Plans of N.

Am., LLC, 353 F. Supp. 3d 788, 801 (N.D. Iowa 2018) (trademark infringement case); see also Salinger v. Colting, 607 F.3d 68, 75-82 (2d Cir. 2010) (finding no presumption of irreparable harm in copyright infringement case). Defendants also maintain that MPAY's harm is lost customers, which is compensable with money damages and is therefore not irreparable harm. Gen. Motors Corp. v. Harry Brown's LLC, 563 F.3d 312, 319 (8th Cir. 2009) (economic loss is not irreparable harm).

Because MPAY has not established a likelihood of success, the Court cannot presume irreparable harm even if such a presumption were appropriate. And much of the harm MPAY alleges is in the form of lost customers. MPAY has failed to establish that it will suffer irreparable harm in the absence of an injunction.

### 3. Balance of Equities and Public Interest

In copyright-infringement and trade-secret-misappropriation cases, the public interest lies in preventing such infringement or misappropriation and protecting valid copyrights and trade secrets. However, because MPAY has not demonstrated a likelihood of success on the merits of its claims, the public interest does not require the Court to protect MPAY's interests with an injunction.

Moreover, Defendants have averred that they will suffer significant harm if the Court prevents them from using the software that forms the basis of their businesses. Given that MPAY has not established irreparable harm, the balance of equities does not require an injunction here.

### C. Consolidation

Finally, Defendants ask that the Court consolidate this matter with <u>OnePoint, LLC v. MPAY, Inc.</u>, 19cv465 (PAM/BRT). But the two cases are already pending before this Court and Magistrate Judge Thorson, and thus formal consolidation may be unnecessary. The parties are free to seek formal consolidation from Magistrate Judge Thorson, however, if they believe such consolidation is necessary or appropriate.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that** MPAY's Motion for Preliminary Injunction and Expedited Discovery (Docket No. 24) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  <u>May 14, 2019</u>

<u>*s/ Paul A. Magnuson*</u>
Paul A. Magnuson
United States District Court Judge