**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

MPAY, Inc.,

        Plaintiff,

v.

Erie Custom Computer Applications, Inc.;
PayDay USA, Inc.; Payroll World, Inc.;
Proliant, Inc.; Proliant Technologies, Inc.;
and Kevin Clayton,

        Defendants.

Civ. No. 19-704 (PAM/BRT)

**ORDER RE: PLAINTIFF'S MOTION TO COMPEL**

Plaintiff's Motion to Compel (Doc. No. 87) relates to a privilege log that was initially served by the Defendants on July 1, 2019. Defendants' privilege log was associated with document requests served in May 2019, and Defendants' responses to those requests were served in June 2019.[1] After receiving the first privilege log from Defendants, Plaintiff's counsel immediately complained that it was inadequate. Thereafter, on July 19, 2019, counsel for the parties met and conferred about the deficiencies and an amended privilege log was produced on August 6, 2019. (*Id.*) Plaintiff was not satisfied with the amended log and alerted the Court of a dispute in September 2019, pursuant to the Pretrial Scheduling Order. In correspondence dated September 19, 2019, Plaintiff requested that the Court direct Defendants to produce the withheld documents or order them to deliver a conforming privilege log. (Doc. No. 82.) Defendants' counsel responded with a letter claiming that their amended

---

[1]     Defendants state that they "agreed to produce hundreds of pages of unprivileged documents." (Doc. No. 96, Resp. in Opp'n to Mot. to Compel 6.)

privilege log was sufficient. (Doc. No. 83.) The Court held a conference call on October 10, 2019, and, without assessing the quality of what Defendants had served, discussed the importance of a compliant privilege log relating to the multiple Defendants, especially because Lead Counsel, Kevin C. Young, wore many different hats in his work with each Defendant.

The Court gave Defendants' counsel a third opportunity to deliver a compliant privilege log. Defendants served their Second Amended Privilege Log on November 12, 2019. After further meet and confer, Plaintiff filed its Motion to Compel on November 18, 2019. Defendants opposed the Motion and a hearing on Plaintiff's Motion to Compel was held on December 19, 2019. (Doc. No. 107.) At the hearing, Plaintiff's counsel argued that Defendants had, up to that point, refused to address Plaintiff's concerns about redactions, email attachments, and email chains. Based on this concern—and the fact that all but one of the challenged Log entries listed emails—the Court asked one of Lead Counsel for Defendants whether any emails included attachments that were not identified in the description. In response, and on the record, Defendants' counsel represented that attachments were not withheld:

> THE COURT: Well, tell me about these documents and then I'll -- I promise I'll let you go through and walk through your responses. I do want to hear them. But are these single e-mails? And what about the argument that this doesn't reflect whether there's e-mail strings so you can't put it together, *and doesn't reflect whether there are attachments to any of these e-mail documents*? So tell me a little bit about that so I have a feel for it as we begin.
>
> MR. MILLER: These, as you noticed, Your Honor, are predominantly e-mails. There's a couple of legal memoranda that are in there that are identified. *There are no attachments withheld from production* so there could be -- there could have been an attachment being an operating agreement, a member agreement, and questions about it. The member agreement, of course, is produced. I believe to the degree it's a string, it's back and forth, Kevin to Kevin and Kevin back to

> Kevin, in that sort of format. The documents that I reviewed, and I can't say I went through in detail all 400 plus, but the documents that I have reviewed are short. Memoranda are the longer ones being five, six pages; the e-mails are a page or two each, and pretty to the point.
>
> THE COURT: Great. Well, you have answered my questions that were pressing so that I'm oriented, so just feel free to walk through the points that you wanted to make sure to make, and respond to the points that were made by Plaintiff's counsel.

(Doc. No. 113, Tr. 44–45 (emphasis added).) Plaintiff's counsel responded that this was the first time that they had heard from Defendants about attachments and that all of the attachments were produced:

> MS. PHILLIPS: . . . I don't think we've ever seen a privilege log that deficient. So this is something where enough is enough. *You know, again, this is the first time we heard about attachments, that all the attachments were produced. We didn't know that. We raised it several times.* We didn't -- nobody said in any log of any letter that no attachments would be withheld.

(Tr. 53 (emphasis added).) After hearing Plaintiff's response, Defendants' counsel did not seek to clarify Plaintiff's counsel's understanding that "all the attachments were produced." Then, assuming that any attachments had already been produced, the Court ordered an ex parte submission to determine whether the withheld emails were privileged or protected by the work-product doctrine:

> THE COURT: So I'll look forward to just getting the documents in separate red ropes and you only have to send me one set of documents. And I see these are e-mails so it doesn't look -- I don't need the attachments *if those attachments have been produced.* Just the e-mails and your description will be sufficient.

3

(Tr. 57 (emphasis added).) As the Court made clear, Defendants were to submit the challenged emails and any attachments not already produced for in-camera review if Defendants claimed they were privileged or protected.

The Court received Defendants' ex parte submission on January 6, 2020, including an annotated log and two binders with a Tab for each of the challenged Privilege Log entries. Importantly, no attachments were included with the submission. The Court understood this to mean that any attachments had already been produced, and no privilege or work product protection was claimed with respect to the attachments. The Court reviewed the withheld emails and noted that many of the emails clearly referenced attachments. Since counsel had assured the Court that they were not withheld, on January 15, 2020, the Court ordered Defendants' counsel to explain—via lawyer certifications—why any withheld cover emails to the produced attachments could remain privileged or protected when all of the attachments were produced. The Order stated:

> In its review of the documents, the Court has identified a significant number of attachments that, if disclosed, would implicate possible waiver of a privilege or work product protection because disclosure of the attachments means either:
>
> • Defendants have taken the position that an attachment to the withheld emails was not privileged or protected; or
>
> • Defendants waived any privilege or protection that might apply to the attachment.
>
> Assuming this is the case, then the email corresponding to the attachments might not still be privileged or protected under the work product doctrine. Further, if any privilege or work product was waived by disclosing the attachment, the Court may also need to review the scope of the waiver to determine whether the corresponding email remains privileged or protected.

4

> Accordingly, the Court seeks additional information before completing its in-camera review.

(Doc. No. 110.) Pursuant to this Court's Order, the attorney certifications were due by January 28, 2020.

But Defendants' January 28, 2020 certifications raised additional—and significant—concerns. The certifications disclosed for the first time that the attachments *had not been produced* as represented at the December 19, 2019 hearing. Lead Counsel Kevin C. Young (who was present at the hearing and heard his co-Lead Counsel's representation) disclosed for the first time that the attachments *would be* produced on January 31, 2020. In his certification, Lead Counsel conceded that Defendants' co-Lead Counsel had admitted in open court that no attachments were withheld; however, in his January 28, 2020 certification he offered a new explanation: "[t]hat statement was intended to convey that no attachments are being withheld and that attachments to the emails listed on the OnePoint Solutions privilege log would henceforth[2] be produced in conjunction with the collection of documents and production that was ongoing at that time, and which continues now." (Doc. No. 117–1, Young Certification 4.)

As discussed below, Lead Counsel's post-hoc explanation, is concerning. The original privilege log was initially produced to correspond to responses due in June 2019. The documents should have been produced long ago.[3] The notion that the February 3, 2020 date set

---

[2] Black's Law Dictionary defines "henceforth" as "[f]rom now on." *Henceforth*, Black's Law Dictionary (11th ed. 2019).

[3] This fundamental understanding is reflected in Plaintiff's November 18, 2019 Memorandum. "The Second Amended Privilege Log omits 15 entries that had been listed on the Amended Privilege Log. Defendants have provided no explanation for the omitted

(Footnote Continued on Next Page)

forth in the Amended Scheduling Order applied as a due date to these past due documents is unsupported. But even more concerning is that counsel had ample opportunity to set the record straight on the attachments at the hearing, especially when Plaintiff's counsel and the Court communicated their understanding that the attachments *had been* produced. If there was confusion after counsel's admission at the hearing, Defendants' counsel should have informed the Court immediately after the hearing to correct their representations. In any event, counsel should have corrected its representations before submitting their documents for this Court's in-camera review.

Due to concerns raised in the January 28, 2020 certifications, the Court issued a Second Order requiring production of all emails listed on the Privilege Log, any attachments, and certifications be filed. (*See* Doc. Nos. 116–118.) Pursuant to the Court's Second Order, documents were delivered to the Court on February 7, 2020.

## ANALYSIS

"The attorney-client privilege extends only to confidential communications made for the purpose of facilitating the rendition of *legal* services to the client." *United States v. Horvath*, 731 F.2d 557, 561 (8th Cir. 1984) (emphasis in original). Its purpose is to encourage "full and frank communication between attorneys and their clients." *Upjohn*

---

(Footnote Continued From Previous Page)
entries. Neither have Defendants produced these documents. Defendants either withdrew their privilege claims for these 15 entries, or they failed to support their claims of privilege and protection." (Doc. No. 89, Mem. in Supp. of Mot. to Compel 23–24) (internal citations omitted).) Defendants do not dispute that they were required to produce discoverable documents in response to the document requests. And, in fact, at that time they did make a production: "Prior to the filing of this opposition, each of the 12 emails have been produced to MPAY." (Doc. No. 96, Resp. in Opp'n to Mot. to Compel 20.)

*Co. v. United States*, 449 U.S. 383, 389 (1981). However, because the attorney-client privilege obstructs the truth-finding process, it is construed narrowly and "protects only those disclosures necessary to obtain legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976) (citation omitted); *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977) ("While the privilege, where it exists, is absolute, the adverse effect of its application on the disclosure of truth may be such that the privilege is strictly construed.") (citation omitted). "A communication is not privileged simply because it is made by or to a person who happens to be a lawyer." *Meredith*, 572 F.2d at 602 (citations omitted). It must be for the purpose of obtaining legal services or advice by the lawyer "in his capacity as a lawyer." *Id.* The communication must be within the scope of the attorney's representation of the client, and it must relate to "the matter for which the legal representation was sought." *In re Grand Jury Proceedings*, 402 F. Supp. 2d 1066, 1068 (D. Minn. 2005).

Defendants also claim the common-interest privilege. The Eighth Circuit has described the common-interest doctrine as follows:

> If two or more clients with a common interest in a litigated or non-litigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client that otherwise qualifies as privileged ... that relates to the matter is privileged as against third persons. Any such client may invoke the privilege, unless it has been waived by the client who made the communication.

*Luminara Worldwide, LLC v. Liown Electronics Co. Ltd.*, 2016 WL 6908198, *5 (D. Minn. January 11, 2016.) (citing *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 922 (8th Cir. 1997)).

7

Work-product protection is asserted as to some of the Privilege Log entries. The work-product doctrine is set forth in Rule 26(b)(3) of the Federal Rules of Civil Procedure:

> (A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> > (i) they are otherwise discoverable under Rule 26(b)(1); and
> >
> > (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) Protection Against Disclosure. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3)(A)–(B). The work-product doctrine applies to documents prepared "in anticipation of litigation," in that "the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987) (citation omitted). The Eighth Circuit has divided work product into two categories: ordinary work product and opinion work product. Ordinary work product includes raw factual information, while opinion work product includes counsel's mental impressions, conclusions, opinions or legal theories. *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000). Ordinary work product is not discoverable unless the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by any other

8

means. *Id.* Opinion work product, however, "enjoys almost absolute immunity and is discoverable only in very rare and extraordinary circumstances." *Id.*

1. **Emails Listed on Defendants' Second Amended Privilege Log**

After three attempts to generate a compliant privilege log, and only after this Court flagged serious concerns, counsel for Defendants withdrew privilege and work-product assertions with respect to Tabs 57, 71–73, 130, 146–147, 150, 167, 170, 180, 198, 248–249, 266, 272, 275–277, 284, 286, 289, 293–295, 301, 304, 314, 346, 360, 368–369, 371, 400, 418, 445, 447, 454–455, 465–466, and 469–470 in their January 2020 certifications.

The Court thus turns to the emails still withheld and finds that at least the following challenged emails[4] are not privileged or protected by the work-product doctrine because they do not reflect confidential communications made for the purpose of facilitating the rendition of legal services to the client, or because they are non-legal business communications where a lawyer is merely "cc'd" on business matters. Tabs 1–4, 31–32, 38, 93–94, 96–97, 101, 112, 115, 122, 133, 149, 157–158, 160, 162, 169, 172, 175, 178, 183, 188–189, 192–193, 197, 201, 234–235, 250, 259, 268, 274, 278, 291, 308–309, 328, 332–334, 338–341, 344–345, 347, 353, 355–357, 359, 361–362, 365, 370, 376–377, 379, 386, 389, 392, 394–398,[5] 399, 402, 407–409, 416, 420, 422, 430–431, 434–439, 444, 449, 451,[6] 452–453,

---

[4] In his certification, Lead Counsel now takes the position that MPAY has not challenged certain documents when the record indicates otherwise. *See* Tabs 97, 122, 158, 188, 207, 213, 282, 285, 310, 328, 332, 342, 351, 361, 362, 374, 378-379, and 381. But the Second Amended Privilege Log shows them as challenged.

[5] Tab 398 is separately discussed as the "United" email.

456, 459–460, 462, and 467 must be produced. The Court has also reviewed the unchallenged withheld emails. Tabs 11, 25, 37, 40–41, 51, 53, 83–84, 86, 88–89, 126, 134, 204, 222–223, 313, 316, 322–325, 329, 443, 463, 471, 479,[7] and 480–481 are not privileged or subject to work-product protection and must be produced for the same reasons.

### 2. Attachments to Challenged Emails

The Court will next address the *attachments* to the challenged emails. As already discussed, Defendants' Privilege Log did not identify any attachments to the emails or separately list any attachments to the withheld emails. Accordingly, a party or judge reviewing the Defendants' Privilege Log would have no idea they withheld other documents attached or forwarded by email on the grounds of privilege or work-product protection. It is typical for privilege logs to use descriptions that note and describe both the email and attachment. *See, e.g.*, *Bartholomew v. Avalon Capital Grp., Inc.*, 278 F.R.D. 441, 447 (D. Minn. Apr. 28, 2011) ("An example of a description . . . is as follows: 'Email from N. Blakely [attorney] to E. Duffey–Long and T. Waitt forwarding status report of N. Blakely's [attorney] legal activities on behalf of Avalon for June 2007 (with attachment).'"). Plaintiff identified this deficiency in multiple "meet and confer" sessions; however, Defendants refused to further clarify or amend their entries. At the hearing, Defendants' counsel represented to the Court that there were no attachments withheld from production. But as already discussed, this was not the case. According to

---

(Footnote Continued From Previous Page)
[6]     This email is also separately discussed.

[7]     This email is discussed as the "Happy Birthday message."

the Court's tally, after January 28, 2020, well over 100 attached documents, not subject to an assertion of privilege or work-product protection, were finally produced.

Now—more than six months after the Privilege Log and discoverable documents were due—Defendants' counsel attempts to assert privilege or work-product protection via their January 2020 certifications to attachments that were not logged or submitted to the Court for in-camera review. The Court finds that Defendants waived any privilege or protection for all attachments to the challenged emails in three ways. First, Defendants had multiple opportunities to assert privilege or work-product protection as to attachments when preparing a privilege log and they did not. But more significantly, Defendants elected to take the position that the attachments were not listed because they were not privileged or protected. (*See* Response in Opp'n to Mot. to Compel 22 (stating "the documents specifically identified on the Privilege Log are the only documents withheld based on privilege. Consequently, any emails or attachments which are not privileged would not be identified on the privilege log").) Second, Defendants represented on December 19, 2019, that no attachments had been withheld, further indicating to the Court that privilege or protection was not asserted. Third, Defendants confirmed their waiver of any privilege or protection by failing to submit any withheld attachments to the Court for in-camera review by January 6, 2020, when they were given the opportunity. *See Nat'l Credit Union Admin. Bd. v. CUMIS Ins. Soc'y*, No. 16-cv-139, 2017 WL 4898500, at *6–7 (D. Minn. Sept. 28, 2017). The resulting waiver is warranted.

Defendants' conduct following the production of the Second Amended Privilege Log supports waiver as well. Defendants' conduct caused unjustified delay in the production of

11

hundreds of documents that only surfaced after Plaintiffs challenged Defendants' Privilege Log. Defendants' conduct was inexcusable. Moreover, Defendants were given multiple opportunities to cure any deficiencies before Plaintiff's Motion was filed and prior to their in-camera submission to the Court. Because of the delay and inexcusable conduct, all attachments to the challenged entries must be produced in unredacted form, except that the time-entry descriptions for lawyer invoices may remain redacted to remove the content of entries for work performed in the above-entitled case. And, for all attachments, Defendants may not "swap out" actual attachments for later versions.[8]

### 3. Remaining Withheld Documents

As for the remaining withheld emails (challenged and unchallenged) and remaining withheld attachments to the unchallenged emails not yet addressed, the application of any privilege or protection is suspect, especially now that Defendants have produced attachments and have waived or withdrawn other privilege assertions.[9] The Court could easily find that due to the multiple egregious deficiencies over the last six months and during the course of responding to Plaintiff's Motion to Compel, everything on the Privilege Log must be produced. But the Court believes that very few of the remaining documents are actually privileged or protected because: (1) they are not subject to any privilege or protection; or (2)

---

[8] Defendants have disclosed that they swapped the original attachment for the final version of the attachment at Tabs 5, 6, and 232. No swapping of any attachment is allowed pursuant to this Order.

[9] For example, Tab 186 does not appear to satisfy the legal standards for privileged or protected content. The Court, however, will now require Defendants to take the remaining entries and certify that they have a good faith basis to continue to assert privilege or work product protection.

privilege or protection has been waived on the covered subject matter due to waiver and the production of other documents. Counsel for Defendants must carefully review each remaining entry and actually compare it to the corresponding document. After careful review, Lead Counsel and Local Counsel must file certifications as described in the Order below.[10] Plaintiff may further challenge any remaining entry.

### 3. Costs and Attorney Fees

Plaintiff requests its costs and attorney fees relating to litigation over Defendants' privilege logs. In addressing this request, the Court finds that the Second Amended Privilege Log was inadequate for at least the following reasons:

- Failure to describe the source entity for the assertion of privilege or work-product protection, which was clearly possible since these columns were added when the Second Amended Privilege Log was submitted for in-camera review. (*See* Doc. No. 110, Ord. for Further Ex Parte Submission by Defs. for In Camera Review Re: Pl.'s Mot. to Compel 1 n.1.)

- Failure to identify whether any withheld email communications included attachments. Defendants did not note any attachments to the emails or separately list any attachments to the withheld emails in their Privilege Log. Consequently, a party or judge reviewing the Defendants' Privilege Log would have no idea that any other documents attached or forwarded by email might be withheld.

- Failure to describe the contents sufficiently. Even trial counsel admitted that the entries were sparse, and it would have been easy to add more detail. (Tr. 36.)

---

[10] The Court recognizes that Local Counsel may have a limited role; however, that role is important. *See* D. Minn. LR 83.8 ("The nonresident attorney must associate with an active member of the court's bar, in good standing, who must: [] participate in the preparation and presentation of the case.").

- Failure to accurately describe withheld documents. (*See* Ord. for Further Ex Parte Submission by Defs. for In Camera Review Re: Pl.'s Mot. to Compel 2 n.3.)

- Failure to accurately describe recipients. For example, Tab 451 is described as "Email-Legal Services re: status of legal documents for potential new business venture." The author is noted as Hollis W. Lee III and the Recipient, Kevin C. Young. It is withheld on the grounds of Attorney-Client privilege. The Tab, however, reveals only a "GoToMeeting Invitation – Kevin Young Update" to ten additional recipients with zero content.

- Failure to timely withdraw privilege or work-product assertions that were inapplicable, wasting Plaintiff's and this Court's time. After three privilege logs were delivered, and only after this Court flagged serious concerns, counsel for Defendants withdrew privilege and work-product assertions with respect to Tabs 57, 71–73, 130, 146–147, 150, 167, 170, 180, 198, 248–249, 266, 272, 275–277, 284, 286, 289, 293–295, 301, 304, 314, 346, 360, 368–369, 371, 400, 418, 445, 447, 454–455, 465–466, and 469–470.

Defendants' cavalier approach to the preparation of their Privilege Log is illustrated by Tabs 398 and 479. The Log entry for Tab 398 states: "Email – Legal Services re: legal documents for potential new business venture" and lists Hollis W. Lee III as the author and Kevin C. Young and Doug Starr as recipients. Defendants claim attorney-client and common-interest privilege. The Tab, however, reveals a page with the subject line "United" and a photograph of adults on an airplane wearing protective headgear. Tab 479 is a happy birthday message withheld on the grounds that it is an "Email – Litigation Matter re: Payroll World discovery responses" covered by the attorney-client privilege. The Court understands that mistakes can happen; however, the Court cannot fathom why, especially when the Privilege Log was challenged and subject to in-camera review, Defendants did not carefully review each document that they continued to withhold on the grounds of privilege or protection.

Defendants' most egregious conduct, however, cannot be characterized as the result of a mistake. Defendants' Lead Counsel repeatedly failed to address Plaintiff's inquiries about the Privilege Log deficiencies, including whether attachments to emails were included. Then, Lead Counsel made inaccurate representations to the Court about the undisclosed attachments. Lead Counsel did not correct their misrepresentations until they were revealed during the Court's in-camera review. The non-privileged and non-work-product protected documents were not produced until after Plaintiff's Motion to Compel was filed. Plaintiff attempted to resolve this dispute before filing its Motion to Compel. Defendants' nondisclosure, response, and objections were not substantially justified, and there are no other circumstances that would make an award of expenses unjust. *See* Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii).[11] The Court will award Plaintiff its reasonable fees and costs associated with its challenge to Defendants' privilege logs, subsequent IDR process, and Motion to Compel.

## ORDER

Based on the file, records, argument of counsel, the Court's in-camera review and responses to the Orders issued during the in-camera review and for all of the above reasons, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel (**Doc. No. 87**) is

---

[11] Defendants claim that this Court cannot award Plaintiff the relief sought because Defendants have not violated any Court Order. Even if Rule 37(a)(5)(A) did not apply, Defendants violated at least this Court's Order to submit the emails and any attachments not produced, but claimed as privileged or protected, by January 6, 2020. They did not comply. (*See* Tr. 57 ("So I'll look forward to just getting the documents in separate red ropes and you only have to send me one set of documents. And I see these are e-mails so it doesn't look -- I don't need the attachments *if those attachments have been produced.* Just the e-mails and your description will be sufficient.") (emphasis added).)

**GRANTED** as follows:

1. All email documents required to be produced pursuant to this Order must be produced no later than **March 6, 2020**.

2. All attachments to the challenged email entries pursuant to this Order must be produced no later than **March 6, 2020**.

3. Defendants' Lead Counsel and Local Counsel must file certifications that: (a) confirm their review as required by this Order; (b) list any additional withdrawn emails or attachments; and (c) certify that there is a good faith basis for asserting privilege or protection as to any of the remaining documents listed on the Privilege Log, whether challenged or not. Plaintiff may challenge any remaining entries if it has a reasonable basis for doing so. The certifications must be filed no later than **March 6, 2020**.

4. On or before **March 6, 2020**, counsel for Plaintiff should file an affidavit supporting their request for attorney fees costs along with any supporting documents.

Date: February 14, 2020            *s/ Becky R. Thorson*
                                                   BECKY R. THORSON
                                                   United States Magistrate Judge