| | |
|---|---|
| MPAY Inc., | Civ. No. 19-704 (PAM/BRT) |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| Erie Custom Computer Applications, Inc., PayDay USA, Inc., Payroll World, Inc., Proliant, Inc., Proliant Technologies, Inc., and Kevin Clayton, | |
| Defendants. | |

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment and Defendants' separate Motions for Summary Judgment. For the following reasons, Plaintiff's Motion is denied, Defendants Erie Custom Computer Applications, Inc. and Payroll World, Inc.'s Motion is granted in part and denied in part, and Defendants PayDay USA, Inc., Proliant, Inc., Proliant Technologies, Inc., and Kevin Clayton's Motion is granted.

## BACKGROUND

This dispute involves software source code for payroll systems. Nearly twenty years ago, Plaintiff MPAY (then known as MattPay) and the Defendant entities,[1] all of whom

---

[1] Defendants are Erie Custom Computer Applications, Inc., Payroll World, Inc. (which together filed one of the pending SJ motions and will hereinafter be referred to collectively as "Erie"), PayDay USA, Inc., Proliant, Inc., Proliant Technologies, Inc. (collectively "Proliant"), and Kevin Clayton, who is the managing member of OnePoint, the president of PayDay and Proliant Technologies, and the CEO of Proliant.

are payroll processors, formed a limited liability company called OnePoint Solutions, LLC, to license a payroll software called Millenium from MPAY. Over the course of their relationship, the parties have executed numerous agreements. The interplay among these various agreements creates many of the issues in the case.

At the inception of their relationship, the parties executed a Member Control Agreement ("MCA") for OnePoint (Am. Compl. (Docket No. 17) Ex. 3) and a Software Development and License Agreement ("SDLA") between MPAY and OnePoint (id. Ex. 4). Both Agreements gave OnePoint and its members the right to use MPAY's software. (Id. Ex. 3 § 5.1; Ex. 4 § 2(a).) Defendant entities are "Class L" members of OnePoint; MPAY is OnePoint's only "Class D" member.

The SDLA provided that OnePoint could modify the software to develop "Enhanced Software Products." (Id. §§ 2(e), 3.) The SDLA specifically allows OnePoint to "hire its own independent software developers to develop Enhanced Software Products" (id. § 3(a)) and provides that OnePoint "shall exclusively own on a worldwide basis, all of their respective right, title and interest in and to the Phase Two Enhanced Software Products and all intellectual property rights therein." (Id. § 3(d).) OnePoint was to pay MPAY a royalty of two cents "per pay check issued or processed by [any entity] using" the software, either the original code or "enhanced" products. (Id. § 3(b).)

Over the next several years, the parties disagreed about their duties under their contracts. These disagreements culminated in a lawsuit in this District, OnePoint Solutions

v. MattPay, Inc., 03cv2879 (ADM/AJB).[2]  That lawsuit was resolved with a letter agreement, dated May 21, 2003. (Am. Compl. Ex. 5 (Docket No. 17-1).)  The letter agreement required OnePoint to give MPAY notice of any independent contractor hired to help develop the enhanced software products and prohibited OnePoint from disclosing MPAY's source code to the contractor unless the contractor signed a confidentiality agreement.  (Id. ¶¶ 2(1), (3).)  This letter agreement also "clarif[ied] that, although OnePoint owned the copyrights in any additions or modifications to MPAY's software, MPAY continued to own the "copyright and other ownership rights in the remainder of the source and object code in the resulting product." (Id. ¶ 3.)  However, MPAY did not register any copyrights in any of its code until February and March 2019, very shortly before it filed this copyright-infringement action.

In 2007, after MPAY apparently "failed to fulfill its obligations to furnish OnePoint with the source code," more litigation ensued.  MPAY v. Erie Custom Comp. App., Inc., 970 F.3d 1010, 1014-15 (8th Cir. 2020).  The parties settled their differences with a "Mediated Settlement Agreement" (Am. Compl. Ex. 6 (Docket No. 17-1)) that extinguished most of OnePoint's obligations under the SDLA as of the new Phase II date, except the obligation to pay royalties and other obligations not relevant here.  (Am. Compl.

---

[2] There have been at least two other lawsuits in this District between these parties.  See OnePoint Solutions v. MPay, Inc., 07cv196 (JRT/RLE).  OnePoint also sued MPAY a few weeks before MPAY filed the instant matter, but the Court dismissed that lawsuit for lack of jurisdiction.  OnePoint Solutions v. MPAY, Inc., 19cv465 (PAM/BRT).  There is a lawsuit among at least some of these parties currently pending in state court.  MPAY, Inc. v. OnePoint Solutions, 27-CV-19-4069 (Minn. 4th Jud. Dist.).  According to Proliant, MPAY fairly recently filed a fourth amended complaint in that action.  (Docket No. 488 at 15-16.)

Ex. 6 ¶ 6.) Thereafter, OnePoint provided the source code to Proliant and other Defendants, and those Defendants performed updates and upgrades to the Phase II software. *(Proliant's Reply Mem.)*

In 2015, Erie and Payroll World formed StarrLee, ostensibly as a software development company. (Pieper Decl. Ex. 18 (Docket No. 433-15) (StarrLee operating agreement).) Erie and Payroll World each own 45 percent of StarrLee; the remaining ten percent is split between Mr. Starr and Mr. Lee, who respectively own Erie and Payroll World. Two years later, Erie and Payroll World formed another company, Taslar. StarrLee owns 60 percent of Taslar. None of the Defendants directly owns any stake in Taslar; according to MPAY, Taslar provides software to the six payroll entities that own the other 40 percent of Taslar. MPAY contends that these six entities are former MPAY customers, and that Taslar was formed with the express purpose of "poaching" MPAY's customers. MPAY cites to deposition testimony that Mr. Lee and Mr. Starr pitched the idea of Taslar as the "F! MPAY" group. (MPAY Supp. Mem. (Docket No. 427) at 10.) Erie and Payroll World also granted a sublicense for the Phase II software, now referred to as ReadyPay, to StarrLee. StarrLee, in turn, granted a sublicense to Taslar. MPAY contends that these sublicenses were prohibited under the parties' agreements.

MPAY contends that Defendants violated the parties' agreements by providing source code for the software to entities who did not qualify as "independent contractors" or "software developers" as ostensibly required by the software-licensing agreement. MPAY also asserts that Defendants violated the parties' agreements by sublicensing the software to entities in which no Defendant owned a majority stake. Finally, MPAY

4

complains that it has not received royalty payments from Defendants since it filed this lawsuit. As discussed below, Defendants have held the amounts due MPAY in escrow since MPAY filed this lawsuit. [3] MPAY asserts that both the providing of source code and allegedly improper sublicensing are breaches of the parties' contracts and also constitute copyright infringement—direct, vicarious, and/or contributory—and trade-secret misappropriation.

MPAY now seeks summary judgment on Counts I through III of its Amended Complaint, alleging copyright infringement, and Count VIII, which claims breach of contract. MPAY also asks for summary judgment on Defendants' affirmative defenses. MPAY's Motion, however, in fact seeks only partial summary judgment on these counts, because it asks for summary judgment only as to the source-code issue, leaving the claims arising out of the sublicensing for the factfinder to determine.

Defendants assert that summary judgment is warranted as to all of MPAY's claims, which include trade secret misappropriation under federal and state law against all Defendants, a claim under the Minnesota Deceptive and Unfair Trade Practices Act ("DUTPA") against the LLC Member Defendants, tortious interference, breach of the implied covenant of good faith and fair dealing against the LLC Member Defendants, a claim for account stated against the LLC Member Defendants, and a claim for unjust enrichment against all Defendants.

---

[3] According to Erie, MPAY has challenged the propriety of this escrow in state court. (Docket No. 514 at 15.) The state court refused to grant MPAY summary judgment on the issue of whether the funds are due MPAY under the terms of the parties' contracts. (Docket No. 516-1.)

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and inferences that "may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." Enter. Bank v. Magna Bank of Mo., 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

**A.    Independent Software Developer Claim**

As noted, part of MPAY's copyright and breach claims asserts that, by providing the source code to entities that ostensibly were not acting on behalf of OnePoint and were not true "independent contractors," Defendants breached the parties' agreements and violated MPAY's copyright. This claim was at the heart of MPAY's request for a preliminary injunction.

In denying MPAY injunctive relief, this Court found that the parties' agreements allowed OnePoint to provide the source code to "independent" software developers, and that the actions of which MPAY complained did not constitute a breach of the parties' agreements nor were they infringing or misappropriating. The Eight Circuit affirmed this conclusion, specifically agreeing that the parties' agreements "allow[ed] OnePoint to develop 'enhanced software products' which 'must necessarily entail providing the source code to others.'" MPAY, 970 F.3d at 1017 (quoting District Court decision).

MPAY now contends that there are multiple questions of fact as to whether the

6

entities possessing the source code were in fact independent contractors. But both this Court and the Court of Appeals specifically held that MPAY's trade-secret and copyright claims failed because the parties' contracts permitted Defendants to do what they did.

When a contract is unambiguous, interpretation of that contract is a matter of law. Brookfield Trade Ctr., Inc. v. Cty. of Ramsey, 584 N.W.2d 390, 394 (Minn. 1998). The "facts" to which MPAY points do not change what the contracts say. Even if, as MPAY contends, Defendants developed new products using MPAY's source code, that is precisely what the agreements contemplated. As the Eighth Circuit noted, "it is evident that the Software Development and License Agreement authorized OnePoint to develop new software by modifying the source code and to hire others to assist it in doing so, which, as the district court logically concluded, would 'necessarily entail providing the source code to others.'" MPAY, 970 F.3d at 1017. Indeed, the Court of Appeals further found that the "[t]his reading of the Software Development and License Agreement is confirmed by the Letter Agreement." Id.

The agreements allowed OnePoint to hire whomever it chose and did not specifically require OnePoint to enter into a written contract with those developers or to share any such contract with MPAY. The Software Development Agreement provides that OnePoint can "use the software products for its business, the business of any of the Members, or the business of any third party in the United States, Canada, and Mexico . . . ." (Am. Compl. Ex. 4 § 2(a).) Thus, the alleged fact that Erie or Payroll World or Proliant developed enhanced software products for their own use is not, as MPAY asserts, evidence of a breach of the parties' agreement, it is specifically what that agreement contemplated.

Moreover, the 2007 letter agreement terminated all of OnePoint's obligations under the Licensing Agreement. Only the MCA remained in force, and the MCA says nothing about to whom OnePoint could or could not provide the source code.

At the hearing on the Motions, MPAY raised a new argument, contending that section 6 of the 2007 letter agreement somehow required OnePoint to give MPAY notice of any new software developers. There is no mention of notice in section 6, however, and although this section reaffirmed "the parties' rights and obligations" under the MCA (Am Compl. Ex. 6 § 6), the MCA does not provide for any specific notice for or on behalf of any party.

The presence of MPAY source code in Defendant's software is, contrary to MPAY's insistence, not evidence of any nefarious dealings. The companies contemplated that OnePoint and its member entities would use the source code to develop other software. This is what MPAY claims Defendants did. To the extent that MPAY's copyright infringement, misappropriation, breach-of-contract, or other claims depend on either the independent-contractor or source-code-possession theory, those claims fail as a matter of law.

**B.    Sublicenses**

Section 5.4 of the MCA provides that Defendants as members of OnePoint may "sublicense the software to any entity in which such Member owns (a) a majority of the value of the equity and (b) voting control." (Am. Compl. Ex. 3 § 5.4.) Erie and Payroll World take two different tacks in arguing that this provision does not prohibit the sublicenses to StarrLee. First, they contend that the members of OnePoint amended the

MCA to provide that any member could sublicense the software as it chose.  Second, they argue that even under the original MCA, they were allowed to sublicense to StarrLee because the singular "Member" in section 5.4 should be read as including the plural "Members" and StarrLee was majority owned by two OnePoint members, Erie and Payroll World.  They also claim that MPAY cannot claim a breach of contract because it concealed a change in control of MPAY which would have relieved the members of certain obligations.  And they argue that there are questions of fact as to whether they acted with the scienter the MCA's immunity clause requires.

### 1.    Amendment

The members of OnePoint purported to amend section 5.4 effective January 1, 2015.[4]  The amendment, as noted above, allowed any OnePoint member to "approve and provide for the sublicense of the Software to any entity" as long as royalty fees were paid to MPAY.  (Lukoff Decl. (Docket No. 486) Ex. 6 § 5.4.)  The MCA allows for amendment by a vote of members with at least a two-thirds share of the Class L units.  (MCA Art. 13.)  However, "any change that would materially and adversely affect the rights of [MPAY] may be made only with the additional approval of [MPAY.]"  (Id.)

Erie asserts that the MCA provides that MPAY only has rights in certain sections that do not include section 5.4.  (Id. § 1.10.)  But this section delineating MPAY's rights includes "the right to approve certain amendments . . . as set forth in Article 13."  (Id.)  Thus, even if Erie was correct that the MCA limits MPAY's ability to enforce its

---

[4] Despite that Defendants claim to have amended the MCA in 2015, this is the first mention of that amendment in the briefing on the plethora of motions filed in this case since 2019.

provisions, MPAY's rights extend to enforcing the amendment provision.

There are questions of fact as to whether the purported amendment was effective without MPAY's consent. Defendants are not entitled to summary judgment on this basis.

### 2. Singular/Plural

Erie next argues that because the MCA provides that "the use of the singular number shall include the plural and vice versa" (id. § 16.12), the Court should determine as a matter of law that the original MCA's sublicense provision allows sublicensing to an entity in which "members" own a majority stake. But this section also states that it applies "except where the context requires otherwise." (Id.) MPAY contends that the context of the sublicensing provision requires that only a company majority owned by a single member could get a sublicense. As with the amendment issue, there are questions of material fact that preclude summary judgment here.

### 3. Immunity Clause/Scienter

Finally, Erie maintains that the MCA's immunity clause requires MPAY to show that Defendants acted with intent, and MPAY has not marshalled any evidence in that regard. The MCA provides that no OnePoint member will have a claim against any other member unless "such act or failure to act was not in good faith or constituted fraud, gross negligence, or willful misconduct." (MCA Art. 6.) MPAY points out that this immunity clause is limited to "any claim or liability incurred . . . in connection with the conduct of the business of [OnePoint]." MPAY asserts that Erie and Payroll World gave StarrLee a sublicense as part of their own businesses, not OnePoint's. It is notable that Clayton, who was OnePoint's manager, denied authorizing the sublicenses to StarrLee and Taslar. Thus,

there are at least questions of fact as to the application of this clause.

## C. Copyright

Because MPAY does not make clear what its claims are or against whom they are brought, it is an open question whether MPAY intends to bring a copyright or misappropriation claim with regard to its allegations regarding allegedly improper sublicensing, which is the only claim remaining in the case. There seems to be no dispute that as to these sublicenses, Erie and Payroll World did not provide StarrLee or Taslar with the MPAY source code and thus there can be no direct infringement. But because the claim regarding improper sublicenses may in some way implicate the underlying copyright, the Court will briefly discuss the copyright issues.

Despite owning the source code at issue for more than 20 years, MPAY did not register any copyrights in that code until February and March 2019, mere weeks or days before filing this lawsuit. The Copyright Act's presumption of validity attaches only to copyrights that are registered within five years of the work's first publication. 17 U.S.C. § 401(c). Because there is no presumption of validity, Defendants argue that the factfinder must determine whether the work is sufficiently original and protectable for purposes of a copyright-infringement claim.

MPAY does not meaningfully respond to this assertion. MPAY contends that because the contracts mention MPAY's software and certain bills bear MPAY's copyright notice, that is sufficient. But MPAY seeks summary judgment on its copyright claims and given MPAY's failure to register its copyright within five years of the software's creation, it is MPAY's burden to establish the validity of its copyrights. It cannot do so by merely

establishing that the parties acted as if the copyrights were valid.

MPAY's expert witness, Dr. Walker, purports to opine on the protectability of the expression in the source code. But the complex question of whether there are "probative similarities" between MPAY's source code and Defendants' products is a question of fact, or at least a mixed question of law and fact. See Control Data Sys, Inc. v. Infoware, Inc., 903 F. Supp. 1316, 1320-21 (D. Minn. 1995). The analysis must take into account that the parties anticipated that Defendants would use MPAY's source code in developing the phase II software products and in fact had MPAY's explicit permission to do just that.

The protectability of expression is a question of fact for the jury to determine. See, e.g., I-Sys., Inc. v. Softwares, Inc., No. 02cv1951, 2005 WL 1430323, at *4 (D. Minn. Mar. 7, 2005) (Tunheim, J.) (noting that parties submitted evidence to jury regarding what portion of the software was protectable expression). Summary judgment is inappropriate on MPAY's copyright claim arising out of the allegedly improper sublicenses.

## D.    Royalties

The parties' agreements require any licensee or sublicensee of MPAY's software to pay MPAY two cents per paycheck generated using the software. (Am. Compl. Ex. 4 § 3(b); Ex. 6 § 6.) Since MPAY filed this lawsuit in 2019, Defendants have placed all such royalties into a separate account but have not paid any amounts to MPAY. The only evidence in the record is that the escrow account contains all royalties that MPAY is due. (See Mikhail Dep. (Lukoff Decl. (Docket No. 438) Ex. 41) at 122 (Taslar representative's testimony that all royalties Taslar collected were paid into an account for MPAY).) MPAY concedes that the escrow contains all royalties Defendants are obligated to pay. MPAY

contends that because it does not currently have access to the escrowed amounts, Defendants are breaching the parties' agreements. MPAY has also brought an account-stated claim regarding the royalties.

As Defendants point out, the MCA does not require the royalties to be paid within a certain time, and moreover, there is no dispute that all royalties due MPAY will be paid when this lawsuit is resolved. Thus, even if Defendants' conduct was a technical breach of the parties' agreements, MPAY cannot establish any damages as a result of that breach. To the extent MPAY's breach-of-contract claim and accounts-stated claim assert a breach arising out of Defendants' retention of royalties, they fail.

## E.     Other State-Law Claims

MPAY's Amended Complaint also raises claims for unjust enrichment and under the DUTPA. Erie's Motion contends that there are no issues of fact as to these claims, and MPAY did not mention either claim in its opposition memorandum, apparently conceding that judgment is appropriate as to these claims. As Erie argues, Minnesota does not recognize an unjust-enrichment claim when there is a contract governing the parties' relationship. See U. S. Fire Ins. Co. v. Minn. State Zoological Bd., 307 N.W.2d 490, 497 (Minn. 1981). ("[E]quitable relief cannot be granted where the rights of the parties are governed by a valid contract."). And the DUTPA simply does not apply here. These claims are dismissed.

## F.     Contributory and Vicarious Infringement

Clayton and the Proliant Defendants ask the Court to grant summary judgment as to the only remaining claims MPAY makes against them, for contributory and vicarious

infringement/misappropriation of MPAY's copyrights and trade secrets. They argue that the allegedly infringing conduct—the sublicenses to StarrLee and Taslar—were Erie and Payroll World's doing, not Proliant's.

MPAY's opposition to Proliant's Motion concentrates almost solely on its assertion that there was unauthorized use of the source code by providing it to entities that were not "independent contractors." But that assertion is foreclosed by this Court's injunction ruling, the Eighth Circuit's affirmance, and the parties' agreements. MPAY may not maintain any claims regarding the alleged unauthorized use, reproduction, or distribution of its source code.

MPAY contends that, because Clayton sent the source code to Erie, he should have known that Erie would misuse it. This is a bridge too far and cannot support MPAY's contributory-infringement claim. MPAY also argues that because Clayton agreed to the purported amendment of the sublicensing section in 2015, he was aware of the sublicenses and thus is contributorily liable for any infringement of those sublicenses.

But contributory infringement is not a strict-liability concept. See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (2005) ("One infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it . . . .") (citation omitted). MPAY points to no evidence that Clayton or Proliant knew or ratified the conduct of Erie and Payroll World, or indeed took any act that induced or encouraged the alleged infringement or indeed that they had any right or ability to do so. Clayton and the Proliant entities are entitled to summary judgment. They are therefore

dismissed from this case.

## G. Motion to Exclude Expert Witness

In this Motion, MPAY seeks to exclude the testimony of Dr. Mats P.E. Heimdahl. Dr. Heimdahl is the head of the computer-science department at the University of Minnesota. The Supreme Court has assigned district courts with the role of gatekeeper to ensure that only relevant and reliable expert testimony is admitted under Fed. R. Evid. 702. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993). But "[t]he gatekeeper role . . . is not intended to supplant the adversary system or the role of the jury: '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" Allison v. McGhan Med. Corp., 184 F.3d 1300, 1311 (11th Cir. 1999) (quoting Daubert, 509 U.S. at 596). Indeed, expert testimony should be excluded only if it "is so fundamentally unsupported that it can offer no assistance to the jury." Bonner v. ISP Techs., Inc., 259 F.3d 924, 929-30 (8th Cir. 2001).

A portion of the Motion to Exclude is moot. Dr. Heimdahl is a rebuttal expert to Dr. Martin Walker, who is MPAY's expert regarding source code. Because the Court has concluded that MPAY cannot maintain any claims regarding the provision of source code to other entities, no expert testimony is necessary as to whether any of Defendants' products contained portions of MPAY's source code.

Walker also purports to offer opinions regarding whether the source code is copyrightable in the first instance, and Heimdahl criticizes those opinions. MPAY's only remaining potentially viable copyright claim is against Erie and Payroll World for the

sublicenses to StarrLee and Teslar. The success of that claim will depend on MPAY establishing that the source code was in fact copyrightable. Thus, this portion of the Motion is not moot.

According to MPAY, the Court should exclude Heimdahl's criticism of Walker's testimony because Heimdahl admitted in his deposition that he is not qualified to offer any opinions regarding protectable expression. But Heimdahl did not say that Walker's opinion regarding protectability was erroneous. Rather, Heimdahl criticized Walker's analysis of the issue. For example, Heimdahl points out that Walker did not take into consideration that MPAY expected Defendants to use the source code to develop new products. Heimdahl also opines that Walker failed to "show his work" when allegedly applying the abstraction-filtration-comparison test that forms the basis of a protectability analysis for computer code.

MPAY has not established that Heimdahl's opinions will mislead the jury in any way. And Heimdahl is qualified to provide opinions regarding flaws in MPAY's expert's analysis of the copyrightability issue. The Motion is denied.

## H. Affirmative Defenses

MPAY also seeks summary judgment on many of Defendants' affirmative defenses. Some of these defenses, such as personal jurisdiction and venue, are no longer relevant, but because it is obvious that Defendants will not press these theories, MPAY's Motion is unnecessary. Defendants must be allowed to present to the jury their legitimate defenses to MPAY's claims, and the Court expects all parties to fulfill their roles as officers of the Court when doing so. The Motion as to the affirmative defenses is denied without prejudice

to further argument at trial.

**CONCLUSION**

MPAY is not entitled to summary judgment on its claims regarding the provision of source code or on its claims for copyright infringement. There is no evidence in the record to support liability against Clayton and Proliant; their Motion is granted and the claims against them dismissed with prejudice. Erie and Payroll World have established that judgment is appropriate on MPAY's source-code claims, and its claims for unjust enrichment and under the Minnesota DUTPA. To the extent MPAY's breach-of-contract claim encompasses Defendants' escrow of royalty payments, it is dismissed.

Accordingly, **IT IS HEREBY ORDERED that**:

1. Erie Custom Computer Applications, Inc. and Payroll World, Inc.'s Motion for Summary Judgment (Docket No. 406) is **GRANTED in part** and **DENIED in part**;

2. Kevin Clayton, PayDayUSA, Inc., Proliant, Inc., and Proliant Technologies, Inc.'s Motion for Summary Judgment (Docket No. 408) is **GRANTED** and these Defendants are **DISMISSED** from this action;

3. MPAY Inc.'s Motion for Partial Summary Judgment (Docket No. 410) is **DENIED**; and

4. MPAY Inc.'s Motion to Exclude (Docket No. 414) is **DENIED**.

Dated: <u>Tuesday, June 22, 2021</u>                    <u>s/ Paul A. Magnuson</u>
Paul A. Magnuson
United States District Court Judge