UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MPAY Inc.,  Civ. No. 19-704 (PAM/BRT)

        Plaintiff,

v.  **MEMORANDUM AND ORDER**

Erie Custom Computer
Applications, Inc., and
Payroll World, Inc.,

        Defendants.

---

This matter is before the Court on Defendants' Motion to exclude two of Plaintiff's expert witnesses. For the following reasons, Defendants' Motion is denied.

**BACKGROUND**

This copyright and trade-secret action involves software source code for payroll systems. The Court has set forth the background of the parties' dispute in previous Orders and will not repeat that background here. (See Docket Nos. 61, 532.) After dispositive-motion-practice, what remains in the case is whether the parties' agreements allowed the two remaining Defendants to sublicense Plaintiff MPAY, Inc.'s software to two entities they control, StarrLee and Taslar. If the agreements did not allow that sublicensing, the jury must determine whether Defendants' activities constituted infringement of MPAY's copyrights in its software, misappropriation of MPAY's trade secrets, and other related claims. This second inquiry will include whether MPAY's copyrights are valid in the first instance.

In the instant Motion, Defendants challenge two of MPAY's expert witnesses: Frances McCloskey, who opines on the issue of damages, and Dr. Martin Walker, whose opinion focuses on copyright infringement.

**DISCUSSION**

MPAY bears the burden, as the proponent of expert testimony, to establish the admissibility of the testimony by a preponderance of the evidence. Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir. 2001). When faced with a motion to exclude an expert witness's opinions, the Court must evaluate the testimony to ensure that only relevant and reliable testimony is admitted under Fed. R. Evid. 702. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993). But this "gatekeeper role . . . is not intended to supplant the adversary system or the role of the jury: '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" Allison v. McGhan Med. Corp., 184 F.3d 1300, 1311 (11th Cir. 1999) (quoting Daubert, 509 U.S. at 596). Indeed, expert testimony should be excluded only if it "is so fundamentally unsupported that it can offer no assistance to the jury." Bonner v. ISP Techs., Inc., 259 F.3d 924, 929-30 (8th Cir. 2001).

The Eighth Circuit recently emphasized that "excluding an expert's opinion for being fundamentally unsupported is an exception to the general rule that '[g]aps in an expert witness's . . . knowledge' go to weight, not admissibility." In re: Bair Hugger Forced Air Warming Devices Prods. Liab. Litig., --- F.4th ---, 2021 WL 3612753, at *5 (8th Cir. Aug. 16, 2021) (quoting Robinson v. GEICO Gen. Ins., 447 F.3d 1096, 1100 (8th Cir.

2

2006)). "The standard for judging the evidentiary reliability of expert evidence is lower than the merits standard of correctness." Id. at *4 (quotations omitted). And as the court noted, "'cases are legion that, correctly, under Daubert, call for the liberal admission of expert testimony.'" Id. (quoting Johnson v. Mead Johnson & Co., 754 F.3d 557, 562 (8th Cir. 2014)).

### A.    Frances McCloskey

Defendants seek to exclude several opinions offered by Frances McCloskey, a certified public accountant and financial consultant. However, as MPAY points out, the Court's summary-judgment ruling renders moot Defendants' challenge to what Defendants refer to as Ms. McCloskey's "Opinion 2," which calculates damages allegedly arising out of Defendants' use of MPAY's source code. Thus, only two opinions are at issue here: "Opinion 1," asserting that Defendants are liable for lost-profit damages attributable to customers leaving MPAY for Taslar; and "Opinion 2," which calculates damages on a joint-and-several disgorgement theory for Defendants' alleged contributory and vicarious infringement by virtue of the sublicenses to StarrLee and Taslar.

Federal copyright law provides that a copyright infringer is liable for "the copyright owner's actual damages and any additional profits of the infringer." 17 U.S.C. § 504(a)(1). The statute further provides that

> [t]he copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses

3

and the elements of profit attributable to factors other than the copyrighted work.

Id. § 504(b). Thus, while the burden to establish damage causation rests with the copyright owner, the burden to establish apportionment of damages between infringing and non-infringing uses remains with the infringer.

### 1.     **Lost-Profit Damages**

There is no dispute that ten former MPAY customers are now customers of Taslar. Ms. McCloskey opines that MPAY is entitled to all of Taslar's profits from these ten entities, including past lost-profit damages of nearly $5 million, and future damages ranging from $1.8 million to $13.8 million, depending on the length of time to which the jury believes future lost-profit damages should extend.

Defendants' main opposition to Ms. McCloskey's testimony is that she ostensibly did not account for record evidence that these ten entities were dissatisfied with MPAY and would have left MPAY with or without Taslar's involvement. But it is not for the expert to weigh this evidence; evidence-weighing is the province of the jury. Defendants' argument in this regard provides a basis for cross-examination, not exclusion.

Defendants also argue that Ms. McCloskey's opinion as to future lost-profit damages should be excluded because it is speculative, arbitrary, and seeks damages unavailable in copyright actions. Ms. McCloskey calculated lost-profit damages until 2030. Defendants argue that this is not based on any contractual provision, but Ms. McCloskey did not purport to opine as to whether any particular duration of future lost profits was warranted. Rather, she calculated the present value of lost profits for each year

until 2030. It will be for the jury to determine the duration of future lost-profit damages, if any. Defendants have not established that Ms. McCloskey's opinions are so unreliable as to provide no assistance to the jury, and their Motion to exclude her lost-profit damages opinions is denied.

### 2. Disgorgement Damages

Defendants briefly argue that Ms. McCloskey's third opinion should be excluded. This opinion calculates the amount of profit StarrLee and Taslar have reaped from the ten companies that left MPAY for Taslar, and attributes those amounts to Defendants for their alleged contributory and vicarious infringement. According to Defendants, MPAY must seek these alleged profits from the non-party entities, not from Defendants.

But "[r]egardless of whether the disputed profits were earned in part by non-parties, the relevant issue is whether any such profits may fairly be considered profits of the infringer subject to [MPAY's] disgorgement claim." Fair Isaac Corp. v. Fed. Ins. Co., 447 F. Supp. 3d 857, 882 (D. Minn. 2020) (Wright, J.). And "the law does not preclude [a copyright owner] from seeking to disgorge certain profits that, although earned by non-parties, may nonetheless belong to [the infringer]. Id. at 883 (citing, inter alia, Nelson-Salabes, Inc. v. Morningside Dev., LLC, 284 F.3d 505, 517 (4th Cir. 2002) (recognizing that defendants may be jointly liable for profits "collectively derived from the acts of copyright infringement")).

While Defendants fault MPAY for not seeking to join Taslar or other entities in this action, the law is clear that MPAY is not required to pursue all potential defendants in a single action. More importantly, though, MPAY likely has no infringement claims directly

5

against Taslar, and certainly has no such claims against the ten former MPAY customers. These entities likely believed, correctly or not, that Taslar had legitimately sublicensed MPAY's software from Defendants. The entities' profits are potential infringement damages only through Defendants' alleged contributory and vicarious infringing activities.

Whether Taslar or other entities satisfy the "practical partnership" test is thus beside the point. If the jury finds that Defendants did not have the authority to make the sublicenses to StarrLee and Taslar, Defendants are responsible for the entities' alleged infringement of MPAY's copyrights. Defendants' Motion to exclude Ms. McCloskey's opinion is denied.

**B.    Dr. Martin Walker**

Because the parties' agreement allowed Defendants to possess MPAY's source code and to make additional software products using MPAY's source code, MPAY has no claims of direct infringement against Defendants. (June 22, 2021, Mem. & Order (Docket No. 532) at 11.) Rather, MPAY's only copyright claim against Defendants is for vicarious and contributory infringement arising out of the allegedly invalid sublicenses to StarrLee and Taslar. To prove this claim, MPAY must establish that the sublicenses were invalid and that its copyrights in the source code are valid—that is, that there is protectable expression in those copyrights.[1] There seems to be no dispute that if the copyrights are valid but the sublicenses are not, Defendants are liable for vicarious and contributory

---

[1] As the Court found, because MPAY did not copyright its source code within five years of its publication, but rather waited until shortly before it filed this lawsuit to register the alleged copyrights, MPAY's copyrights are not presumed valid. (June 22, 2021, Mem. & Order at 11 (citing 17 U.S.C. § 401(c)).)

infringement.

Much of Defendants' Motion, which argues that Dr. Walker's opinions regarding whether MPAY source code is present in Defendants' software products, is therefore moot. The main purpose of Dr. Walker's "assignment" was to analyze potential infringement of MPAY's source code (Walker Rep. (Docket No. 499) at 3-4.) But "no expert testimony is necessary as to whether any of Defendants' products contained portions of MPAY's source code." (June 22, 2021, Mem. & Order at 15.)

Dr. Walker's report also addresses protectability. The protectability inquiry is two-fold: are there protectable elements in MPAY's code, and, if so, did "those protectable elements comprise a substantial part of [MPAY's] program when it is considered as a whole"? Gates Rubber Co. v. Bando Chem. Indus., Ltd., 9 F.3d 823, 833 (10th Cir. 1993). While much of this case has been litigated as if the answer to the second question is not in dispute, it is apparent from the parties' submissions that Defendants intend to challenge this issue.

1.  **Protectable Elements**

Defendants argue that Dr. Walker's testimony regarding protectability should be excluded because his report contains no specific analysis in that regard, pointing to Dr. Walker's statement that "when I state that certain code contains protectable expression, I mean that I have performed th[e required protectability] analysis." (Walker Rep. at 6.) Dr. Walker's report asserts that he evaluated whether any particular code "was constrained by the vernacular of the source code language or didn't otherwise represent creative content" and excluded any such non-protectable code from his analysis. (Id. at 17.) He does not,

7

however, explain how he arrived at his conclusions regarding protectability.

But as MPAY points out, in his deposition Dr. Walker repeatedly offered to perform the protectability analysis for Defendants' attorneys with respect to specific lines of code. They declined to have him so testify. That he did not set forth in his report precisely the analysis he claims to have performed does not raise questions about his methodology; it is undisputed that Dr. Walker references the doctrines that must be considered in conducting the protectability analysis.

The jury will be required to determine whether any of MPAY's source code contained protectable expression. While Dr. Walker's report may offer little assistance to the factfinder in this regard, it is clear from his report and his deposition testimony that he performed the analysis and can explain that to the jury.

### 2.     Qualitative Significance

Another way to frame the second question discussed above is to determine whether "those protectable portions of the original work that have been copied constitute a substantial part of the original work—i.e. matter that is significant in the plaintiff's program." Gates Rubber, 9 F.3d at 839. This analysis is qualitative, not quantitative. Id. Defendants complain that Dr. Walker appears to have conducted only a quantitative analysis and, as such, he should be precluded from offering his opinions regarding the final element of the protectability inquiry. But as this Court has recognized, the qualitative analysis "poses essentially a value judgment, involving an assessment of the importance of the material that was copied." Control Data Sys., Inc. v. Infoware, Inc., 903 F. Supp. 1316, 1323 (D. Minn. 1995) (quotation omitted). Thus, Dr. Walker's opinion as to qualitative

significance is relevant and may assist the jury. If Defendants believe that it is inadequately supported, they may cross-examine him regarding the basis for it.

Finally, there seems to be a dispute among the parties as to what portions of the code were copyrighted in the 2019 copyright registrations. Dr. Walker's report shows that he researched this issue and determined what code is the subject of the copyrights. Should Defendants raise this issue during trial, Dr. Walker may offer testimony on it.

## CONCLUSION

Defendants have not established that MPAY's expert witnesses should be precluded from testifying. Accordingly, **IT IS HEREBY ORDERED that** Defendants' Motion to Exclude Expert Testimony (Docket No. 450) is **DENIED**.

Dated: Wednesday, August 18, 2021         *s/ Paul A. Magnuson*
                                          Paul A. Magnuson
                                          United States District Court Judge